WASHINGTON ICE COMPANY *vs.* NATHANIEL WEBSTER.

*Statute of Frauds. Replevin, R. S., c. 96, § 11. Damages. Remedy on replevin bond. Jury.*

The written acceptance of a verbal offer, not containing its terms, is not binding upon the party so accepting within the Statute of Frauds.

If the verbal offer is subsequently reduced to writing in the form of a contract by the party making it, and the party to whom it is made refuses to sign it, the latter is not bound by it.

A seizure of goods by force, or under color of legal process, is not a receipt or acceptance of them within the Statute of Frauds.

Where a defendant in replevin is entitled, under R. S., c. 96, § 11, to a return, he is likewise entitled to damages and costs.

The damages are to be the compensation for the interruption of his possession, the loss of the use of the goods from the time of the replevin till their restoration, and their deterioration within the intervening time.

Actual damages must be proved to entitle a defendant in replevin to recover more than nominal damages.

When the property is goods or merchandise, capable of physical use or enjoyment, the damages assessed are interest upon their use to the time of the rendition of the verdict in the replevin suit, or compensation for the loss of their use and enjoyment when that exceeds interest.

The damages arising from the possible loss of customers, in not having the goods ready for sale, or in purchasing goods of the same description as those replevied, to fulfil existing contracts, are too remote, contingent and indefinite, to become an element of damages.

The expense of procuring men, teams and appliances for the removal of the goods replevied, which becomes useless by reason of their being so replevied, may be recovered as damages.

Where the damages are assessed for the defendant at *nisi prius*, and the goods replevied are not restored on demand upon the writ of return, the defendant in a suit upon the replevin bond, is entitled to the value of the goods at the date of the demand and interest thereon, in addition to the damages and costs in the replevin suit and interest.

If the damages for the unlawful taking are not assessed in the replevin suit, and the goods replevied are not restored, the defendant may recover, in an action upon the replevin bond, all damages sustained by such taking; which will ordinarily be the value of the goods when replevied and interest thereon.

Where the plaintiff becomes nonsuit, and at the time of a demand on the writ of return, the goods are of more value than when taken, and they are not restored, the defendant in his action upon the replevin bond may have the damages provided by R. S., c. 96, § 11, assessed upon the same principles as if the assessment had been made at the time of the nonsuit, and in addition the value of the goods at the time of demand, and interest.

The plaintiff is bound by his valuation of the goods replevied, but it does not bind the defendant.

By his bond, the plaintiff is bound to restore the goods in like good order and condition as when taken.

Where, upon the plaintiff's evidence, the court has ordered a nonsuit, the defendant has a right to have the damages to that time assessed by a jury.

ON REPORT.

REPLEVIN of four thousand tons of ice stored in the defendant's ice-house at Boothbay, in this county, which the plaintiff company claimed had been sold by him to them, but that he refused to ship it in accordance with the terms of their contract. On the fifteenth day of June, 1870, the plaintiffs made Mr. Webster a verbal offer of $4.50 a ton for his ice, but refused to put it in writing to be "peddled round," though consenting to let him have a week to consider of it. Two days later Mr. Webster telegraphed that he would accept their offer. The president of the company then wrote to him, enclosing a memorandum of their contract for his signature, but owing to its being misdirected, this letter did not reach the defendant till the twenty-ninth day of June, 1870. In the meantime, failing to hear from the plaintiffs, he had sold, and contracted to deliver, his ice to other parties. The Washington Ice Company claimed that the property passed to them under their negotiations with Mr. Webster, and, upon his refusal to deliver it to them, replevied it on the twelfth day of August, 1870.

After the facts, which are stated more in detail in the opinion, had all been elicited, the case was taken from the jury and submitted to this court, under an agreement that if the action was maintainable, it was to stand for trial; otherwise, a nonsuit to be entered.

*A. P. Gould*, for the plaintiffs.

I.  The written evidence of the contract is sufficient to take it out of the Statute of Frauds.  It was not necessary that plaintiff's offer should be reduced to writing before it was accepted.  If, in the course of the correspondence between the parties, written evidence is found, which shows the terms of the contract, it is immaterial in what order such evidence proceeds.  The mischiefs which the statute was intended to prevent are avoided, if at any time, and in any form or order, there is such memorandum of the sale made as is required.

If a verbal offer is reduced to writing after it is accepted, it is sufficient.  A memorandum in writing will be as effectual against perjury, although signed subsequently to the making of a verbal contract, as if it had been executed at the moment when the parties consummated their oral agreement.  *Marsh v. Hyde*, 3 Gray, 331, 332.

It has been sometimes doubted whether it might not be reduced to writing after action brought, upon the ground that the statute only meant to secure written evidence of the contract.  Browne on the Statute of Frauds, (3 ed.) § 352, *a*.

A note or memorandum in writing of an oral contract, is essentially different from a written contract.  The latter supercedes and takes the place of the former, and is conclusive evidence of all the stipulations of the bargain; but the former may be made at any time after the parties have entered into an engagement by verbal agreement, and only the main features, or essential elements, of the contract are required to be reduced to writing.  *Sievewright v. Archibald*, 17 Adol. & Ell., (N. S.) 107, 114; *Morton v. Dean*, 13 Mctc., 385.

In the very nature of such transactions, the memorandum must

be *posterior*, in point of time to the contract of which it is the record; and it has accordingly often been held that documents and letters, though all written subsequent to the conclusion of the bargain, may be coupled together for the purpose of showing that a written memorandum of it was duly made.    *Williams v. Bacon*, 2 Gray, 387; Browne on the Statute of Frauds, § 346 and notes ; *Gale v. Nixon*, 6 Cowen, 445; *Ide v. Stanton*, 15 Vermont, 685; *Jackson v. Lowe*, 1 Bing., 9; *Sanderson v. Jackson*, 2 Bos. & Pul., 238; *Salmon Falls Manf. Co. v. Goddard*, 14 Howard, 447 ; *Jenness v. Mount Hope Iron Co.*, 53 Maine, 20.

It is not essential that the paper relied upon as containing a sufficient memorandum of the bargain, or of the offer of one party, which is accepted by the other, should have been made as a memorandum of it, but if the terms are contained in any document, or any number of documents relating to the same matter, though intended for another purpose when written, it is sufficient.    And it does not invalidate the document as a memorandum of the bargain, if the same paper contain additional matter, or if written out as a formal contract intended for execution as such.    *Lerned v. Wannemacher*, 9 Allen 412, 416.

Indeed, it is entirely immaterial what the form of the memorandum is, or for what purpose it is made, or whether it contains matter foreign to the necessities of a memorandum; if it is only signed by the party to be charged, and contains by statement or reference, the essential parts of the bargain, it is sufficient.

And it is immaterial whether the terms of the bargain are set forth in the offer, or in the acceptance of it ; if together they show the terms, it is sufficient.

If the offer is in writing, and the acceptance verbal, and the acceptance is afterwards reduced to writing, it is sufficient to charge both parties.    If the offer is verbal, and the acceptance in writing, and the offer is afterwards reduced to writing, the result is the same.

If a contract is wholly by correspondence, it is complete when a distinct proposition is made, which is accepted by a letter mailed

Washington Ice Co. v. Webster.

by the party receiving the offer, within a reasonable time, and before he receives information of a withdrawal of the offer. 1 Parsons on Con., 439, 440, and notes; Chitty on Con., 11, 12.

Putting the answer by letter in the mail, containing the acceptance, and thus placing it beyond the control of the party, is valid as a constructive notice of acceptance. 2 Kent's Com., 477 ; *Taylor v. Merchants Fire Ins. Co.*, 9 Howard, 390, 401, 402.

And this is true, even if a withdrawal of the offer is made before the acceptance reaches the party making it. *Wheat et al. v. Cross*, 3 Md., 99.

June 15, 1870, defendant had an interview with the plaintiffs in New York, wherein they stated to him the terms upon which they would purchase his ice.

This may be regarded as a verbal offer of purchase, or as a statement of terms which, if offered, they would accept. Defendant requested plaintiffs to put their terms in writing. They declined to do this at that time, but promised to put their offer in writing as soon as it should be accepted by defendant, which seems to have been satisfactory to him. Defendant requested that a time should be fixed, within which he might accept, and a week was agreed upon. Two days afterwards, plaintiffs received from defendant the following telegram: "You shall have my ice for your offer. Write me."

Even without the request to write him, it may be assumed that in accepting the offer, defendant acted upon the promise of plaintiffs that they would reduce their proposition to writing, as soon as it was accepted, for he must have understood that the offer and acceptance must both be in writing to be binding ; and it is not to be supposed, that he did not intend to make a valid contract. But he makes a special request to plaintiffs to write him. What did this mean under the circumstances ? The telegram, in terms, refers to the previous offer. The request to write him could only mean, that he desired plaintiffs to put the offer, as containing the terms of the contract, into writing and send it to him. Plaintiffs complied with this request.

The telegram was received June 17. On same day plaintiffs mailed a letter to defendant saying, "your telegram accepting our offer is received. I will send memorandum of the offer to-morrow." This letter must have been received by defendant on the evening of the 18th, and gave him notice that there would be legal evidence of the bargain the next day. June 18, plaintiffs reduced their offer to writing, putting it in the form of a contract, mailed it to the defendant, and although by mistake it was addressed to Gloucester, Me., we prove that it was re-mailed to defendant, and reached his place of residence, and was placed in his box in the post office, June 22. It was not our fault that he was not there to receive it in person, but left the matter in charge of a clerk, who received and opened it.

Plaintiffs thus went beyond legal necessity, to take the case out of the statute. It was only necessary that they should reduce the offer to writing. They not only did this, but put a copy of it into the hands of the defendant within five days after it was accepted, incontestably within a reasonable time, if that had been necessary. There is no pretence that the offer had been withdrawn before the memorandum, and if he had bargained the ice to another, it could have no effect upon the plaintiffs' right, as there had been no delivery to the third party.

The principal assertions of the defendant's letter of June 30 are proved to be untrue. The memorandum was received at Gloucester, June 22, instead of 29. Defendant did not wait a week, as his letter asserts, for it was admitted at the trial, that he left Gloucester on the morning of June 22, less than five days after he sent his acceptance of the verbal offer. And his departure from home was the cause of his not receiving the memorandum before the twenty-ninth, not its mis-address. On this question whether plaintiffs shall be nonsuited on their own evidence, the assertion of defendant in a letter, that he had sold the ice, without proof of the fact, or that delivery had been made to a third party, could have no legal effect upon the plaintiffs' rights, nor in any way invalidate the contract of sale to them. Where there are two equally bind-

ing contracts of sale, he who first gets possession holds the goods. Plaintiffs had no intimation that defendant had sold to another, until they received defendant's letter dated June 30, twelve days after both their offer and defendant's acceptance, were reduced to writing.

That the memorandum contained a true statement of plaintiffs' verbal proposition, we have the testimony of Leonard, sustaining it in all particulars.

Defendant introduced a letter from Leonard in which he says defendant named September as the time of delivery, and that plaintiffs did not, at the date of the letter, demand it earlier. But this letter was written fifteen days after the offer was made, and thirteen after it was reduced to writing, and in no way tends to impeach Leonard's testimony as to what the offer was, even if it can be considered at all, as the case is now presented. But it is the plaintiffs' evidence alone which can be considered in determining the propriety of a nonsuit. The stipulation of the report is, that if the action can be maintained "upon the evidence introduced by plaintiffs," it is to stand for trial. If called upon to explain the letter as an element of defence, our answer would have been, that by the usages of the ice business, September is regarded and treated as a summer month. We had a right to have the question submitted to the jury, whether the memorandum stated the verbal contract correctly.

The memorandum contained all the elements of a contract, which it is necessary to reduce to writing. The lot of ice is sufficiently designated without filling the blanks. It was, "all the ice of said Webster, consisting of about four thousand tons, being the same now housed on the shore of the State of Maine, referred to in an interview" between the parties. This is clearly a sufficient designation of the thing sold. The quantity, price, time of delivery, and manner of payment, are all stated. It was not necessary that the precise locality of the ice should be stated in the memorandum. No authority goes as far as this. Defendant's treatment of the memorandum shows that he regarded it as a true

statement of plaintiffs' offer. He retained it in his possession until the trial, without complaint that it was inaccurate in any particular. In his letter of June 30, he acknowledges the receipt of it, and does not deny its correctness but, assuming that it did truly state the offer, excuses himself from the performance of his agreement, upon the fictitious ground that he did not receive the memorandum in due season. This letter is an important link in the chain of written evidence to take the contract out of the statute. Chitty on Contracts, 59.

The jury would have been authorized to find from all the evidence introduced by plaintiffs, that their verbal offer accepted by defendant's telegram was stated in the memorandum with substantial accuracy; and that it was reduced to writing, and signed by plaintiffs, with notice to defendant, within a reasonable time. It is a much stronger case than *Williams v. Bacon, supra*, where the contract was sustained.

II. This was not an agreement to sell merely, but was a contract of sale, and the property, and the right of possession were transferred to plaintiffs.

It was not a sale for cash on delivery; but payment was to be made at a time subsequent, dependent upon the option of defendant in drawing his bill. Defendant had, therefore, no lien for the price; and although he was to make delivery, if he failed to do so, plaintiffs had a right to take possession.

As soon as the bargain is struck, the property of the goods is transferred to the vendee, and the price to the vendor; and where payment is not to be made till after delivery, if the vendor refuses to deliver, the vendee may seize the goods, or have an action against the vendor for them. If the goods should be destroyed by accident before vendee gets possession, the loss would be his, because by the contract the property was in him. 2 Black. Com. 448; Chit. on Con., 297, 298; 1 Parsons on Con., 440; *Wing v. Clark*, 24 Maine, 336; *Webber v. Davis*, 44 Maine, 147; Parsons' Mercantile Law, 42 and note.

Delivery was to be made on board vessels to be provided by

plaintiffs, at the dock near where the ice was stored, and the price was to be paid on sight drafts, but not until after plaintiffs had received the bills of lading.

Under such a contract, delivery to vendees on board their vessels must necessarily be made, and the vessels be on their voyage to New York, before payment could be demanded, as no bills of lading are signed until cargo is received.

Where by the terms of the contract the vendor precludes himself from the right to demand payment until after delivery, he has no lien for the price, no right of detention until it is paid, and no right of stoppage *in transitu*, unless the vendor becomes insolvent. Parsons' Mercantile Law, 44 ; *Parks v. Hall*, 2 Pick., 206 ; 2 Kent's Com., 64, 499.

Although it was the duty of defendant to remove the ice from the house to the vessel, plaintiffs might waive this and do it themselves ; and if he failed to do it within the time stipulated, they might take the property, and charge defendant with the cost of delivery. It was simply labor to be performed by defendant, upon plaintiff's property, and defendant was not entitled to retain possession for the purpose of performing it.

The ice was to be weighed on delivery ; but not by defendant. Weighing by a disinterested party, as in this case, was a sufficient compliance. Weighing and measuring are not always necessary to constitute a delivery and transfer of property, even when it is sold by weight or measure ; but in cases where the property sold is in a state ready for delivery, and the payment of the price, is not a condition precedent to the transfer, a good delivery may be made without weighing. *Denny v. Williams*, 5 Allen, 1 ; *Riddle v. Varnum*, 20 Pick., 280.

Where by the terms of an agreement of sale, or by a fair implication therefrom, the article sold is to remain in the possession of the vendor for a specific time, or for a specific purpose, as part of the consideration, as for instance to perform certain labor upon it, and the sale is otherwise complete, the possession of the vendor will be considered the possession of the vendee, and the delivery

will be sufficient to pass the title, even as against subsequent purchasers. *Hotchkiss et al. v. Hunt,* 49 Maine, 213, 221; *Morse v. Sherman,* 106 Mass., 430.

Under the contract in this case it seems clear that the title passed. Whether plaintiffs seized the property before the time expired, which was allowed to the defendant in which to make delivery, would seem to be immaterial on this issue, as the seizure before that time would not affect the plaintiffs' right to hold the property, but would affect only their right to charge him the cost of transfer from house to vessel.

III. The suit was not premature. The ice was the plaintiffs' property. If we grant, for the sake of the argument, that defendant had the right of possession, a sale of it to a third party, and his preparation for delivery to that party, which is proved in this case, was a conversion, and authorized the immediate commencement of this suit.

Any act by a party who has the rightful possession of the property of another, which negatives the right of the owner, or is inconsistent therewith, is a conversion, authorizing an action of tort by the owner. 1 Hill. on Torts, 90, 91.

So also the misuse of a thing, or the use of it without the license of the owner, or wrongful sale. 2 Id., 102. *Fuller v. Tabor,* 39 Maine, 519.

Notwithstanding lawful possession, the owner may bring replevin without demand, if the possessor has exercised acts of ownership inconsistent with the plaintiffs' title; as by attempting to sell, &c. Hill. on Rem. for Torts, 67, § 52. *Prater v. Frazier,* 6 Eng., 249; *Emerson v. Fish, et al.,* 6 Maine, 200. *Whitney v. Lowell,* 33 Maine, 318, where it was held that "the sale, or offer to sell, by the defendant, was evidence of conversion."

If defendant had the right of possession until the full time for delivery had expired, by his sale, or attempt to sell, to a third party, he forfeited that right without any manual taking, or removal of the ice, and the plaintiffs thereby acquired the right of immediate intervention. *Webber v. Davis,* 44 Maine, 147, 152.

IV. Defendant can recover no damages unless he is entitled to judgment for a return. R. S., c. 96, § 11.

If the ice was the property of plaintiffs', but they were not entitled to the possession at the time the action was brought, they would be entitled to it at the present time—there being no lien for the price—and there can be no judgment for a return. *Ingraham v. Martin*, 15 Maine, 371, 373 ; *Tuck v. Moses*, 58 Maine, 461, 474 ; *Bath v. Miller*, 53 Maine, 308, 315 ; *Wheeler v. Train*, 4 Pick., 168 ; *Simpson v. McFarland*, 18 Pick., 427, 431 ; *Whitwell v. Wells*, 24 Pick., 31 ; *Martin v. Bailey*, 1 Allen, 381.

If there was no lien for the price, defendant would not be entitled to judgment for a return, but plaintiffs would be entitled to retain the goods, and defendant would have his action for the price, just as if he had delivered the goods under the contract.

. If the general property of the ice was in plaintiffs, and the defendant had a lien for the price, he would be entitled to judgment for a return, but be entitled to no damages for detention, for he could recover only the price, with the interest thereon, as that was the only claim he had on the property. *Witham v. Witham*, 57 Maine, 447, 449 ; *Bartlett v. Kidder*, 14 Gray, 449.

Under our statute and practice, the question of damages for taking cannot be reached until the motion for a return is disposed of, as defendant is entitled to damages only upon condition that, "it appears that the defendant is entitled to a return of the goods." Whether the action can be maintained, must first be settled by a decision of the questions of law and fact, respecting the maintenance of the action; and the question of damages for taking is not decided in the same trial; but after judgment for the defendant upon nonsuit or otherwise, is rendered, it is his duty to file a motion for judgment for a return of the property replevied, and without such motion, no such judgment can be entered. *Smallwood v. Norton*, 20 Maine, 83, 88 ; *Badlam v. Tucker*, 1 Pick., 284, 286.

In *Bath v. Miller, supra*, on p. 316, the court say, "In actions of replevin, when it is determined that the action cannot be main-

tained, it is always essential to inquire and determine, and to have a distinct adjudication, whether or not the property shall be returned to the defendant; and this latter inquiry necessarily involves an inquiry into the title and the right of possession, as between the contending parties, of the broadest and most unlimited character." It is a very different question from that, whether the action can be maintained, and must be decided by the court, though perhaps an issue of fact to the jury could be framed to aid the court in reaching its decision. There would be an incongruity in the trial of this issue at the same time of the trial of the question of the maintenance of the action. The objection of the defendant, therefore, to the final disposition of the main question, before the hearing upon the question of damages, was without foundation. He lost no rights by being compelled to wait until the right to maintain the action was determined, and could not regularly have had the question of damages for taking decided by the same jury, and on the same trial, which disposed of the main question.

V. The rule of damages is the same in replevin as in other actions of tort, 2 Parsons on Con., 478. The general rule in tort is the value of the property at the time of conversion, with interest from that date. 2 Greenl. on Ev., § 276, notes and authorities.

Though it has been held in England that the jury may, under some circumstances, in their discretion, find the value at a subsequent time, the courts in most of the States in this country, hold to the former rule as the safer. *Greenfield Bank v. Leavitt*, 17 Pick., 1; *Brown v. Haynes*, 52 Maine, 578, 581; *Robinson v. Barrows*, 48 Maine, 186, 190; *Hayden v. Bartlett*, 35 Maine, 203; 2 Parsons on Con., 472; Hill. on Rem. for Torts, 419, 435.

More latitude is allowed to the jury in New York. *West v. Wentworth*, 3 Cow., 82; *Clark v. Finney*, 7 Cow., 681; *Suydam v. Jenkins*, 3 Sandf., 614.

But in Maine and Massachusetts, the rule which makes the value at the time the right of action accrues, with interest thereon, the measure of damages for taking or withholding property, has been uniformly held.

The rule contended for by defendant would be too uncertain, remote, and contingent.

In this State, if the property has perished, or been destroyed, pending the replevin suit, so that it cannot be returned, there is no necessity for the assessment of damages for taking or detention in that suit, as the whole damage may be recovered in the suit upon the replevin bond. *Smith v. Dillingham*, 33 Maine, 384; *Thomas v. Spofford*, 46 Maine, 408, 411.

It was conceded at the trial, that the ice could not be returned, hence the ruling of the judge, that the damages might be recovered in a suit on the bond.

If at the time of the rendition of judgment in the replevin suit the property is in existence, the proper method, after the entry of the judgment for return, is to cause the damages for taking to be assessed. In such case the rule of damages is the interest upon the value of the property at the time it was taken in replevin to the final judgment.

If the property is of less value at the time it was taken in replevin than at the time of demand upon the writ of return, defendant may have damages in a suit upon the bond, based upon the value of the property at the time of demand. *Tuck v. Moses*, 58 Maine, 462.

He has his election, between the value at the time of taking, and the time of demand on the writ of return.

It is only in cases where the property is capable of use, that damages may be recovered for the loss of the use of the property pending the suit; as in case of the replevin of horses, oxen, milch cows, and perhaps a machine. *Stevens v. Tuite*, 104 Mass., 328.

There is no point of time between the taking, and the judgment for a return, at which the market price can be inquired into. The court cannot follow the fluctuations of the market. It would be too contingent and speculative. The general rule in tort, as has been shown, is, that inquiry cannot be made into increase in market value, subsequent to the conversion; and the only reason why

it is allowed in an action on a replevin bond, is that when the plaintiff in replevin fails to return the goods upon demand on the writ of return, he is at that time guilty of a breach of his bond ; and as the defendant is entitled to have his property, or its value, at that time, if he chooses, its value may be inquired into.

In the case at bar, the ice being simply an article of commerce, the only damages which can be assessed upon the entry of judgment for a return, is the value of the ice at the time of the taking, with interest to the date of the judgment. *Kennedy v. Whitwell et al.*, 4 Pick., 466 ; *Whitwell v. Wells*, 24 Pick., 34; *Berry v. Hoeffner*, 56 Maine, 170 ; *Pierce v. Benjamin*, 14 Pick., 356, 361; *Johnson v. Sumner*, 1 Metc., 172, 179.

*B. F. Butler, C. P. Thompson* and *H. Ingalls*, for the defendant.

Burden is on the plaintiffs to show title. *Cooper v. Bakeman*, 32 Maine, 192.

They fail to do it, in this case, because there is no sufficient memorandum to take it out of the Statute of Frauds. *Jenness v. Mt. Hope Co.*, 53 Maine, 20 ; *Waterman v. Meigs*, 4 Cush., 497; *Morton v. Dean*, 13 Metc., 385.

The defendant is not bound by the plaintiffs' statement of what their own verbal offer was. *Smith v. Gowdy*, 8 Allen 566 ; *Boardman v. Spooner*, 13 Allen, 353; *Lyman v. Robinson*, 14 Allen, 242 ; *Hazard v. Day*, Id., 487.

The damages should be the highest price ice has reached since this was taken, with interest, and compensation for the special damages shown in addition. *Tuck v. Moses*, 58 Maine, 462 ; *Barnes v. Bartlett*, 15 Pick., 71 ; *Swift v. Barnes*, 16 Pick., 194 ; *Parker v. Simonds*, 8 Metc., 205 ; *Kafer v. Harlow*, 5 Allen, 348; *Stevens v. Tuite*, 104 Mass., 328.

The valuation named in the writ cannot affect the defendant, though it does estop the plaintiff to claim it should be any less. *Howe v. Handley*, 28 Maine, 241 ; *Thomas v. Spofford*, 46 Maine, 408.

Washington Ice Co. *v.* Webster.

APPLETON, C. J. The plaintiffs replevied some four thousand tons of ice in store at Boothbay, in this State, from the defendant, who is admitted once to have been the owner.

By R. S., c. 111, § 4, no contract for the sale of any goods, wares or merchandise, for thirty dollars or more shall be valid, unless the purchaser accepts and receives part of the goods  *  * or some note or memorandum thereof is made and signed by the party to be charged thereby, or by his agent.

The first question presented for consideration, is whether the plaintiffs have acquired any title to the ice in controversy by virtue of any note or memorandum of sale "signed by the party to be charged thereby, or by his agent;" for if not, this suit cannot be maintained unless a receipt or acceptance of the whole or a part is shown.

The defendant, then owning some four thousand tons of ice, on the fifteenth day of July, 1870, called upon Moses G. Leonard, the president of the plaintiff company, at their office in the city of New York, and proposed to sell the company the same. Leonard, in behalf of the plaintiffs, offered the defendant $4.50 per ton for the ice he described, to be delivered on board vessels to be provided by his company during the ensuing summer; the ice to be properly stowed with sufficient dunnage on board vessels, at defendant's expense; and to be weighed on delivery into vessels; the plaintiffs to pay for it on receipt of sight drafts, accompanied by bills of lading. The defendant wanted time in which to accept or reject this proposition, and a week was given. He then desired it to be put in writing, which was declined. The parties then separated.

June 17, 1870, the defendant sent the following telegram, which was received on the same day at New York by the president of the plaintiff company.

"GLOUCESTER, MASS., June 17, 1870.

To M. G. Leonard, President of Washington Ice Company, New York City, No. 393 and 395 Canal St.

You shall have my ice for your offer. Write me.

NATH'L. WEBSTER."

The dispatch refers only to a verbal offer. It does not describe the price or the quantity of the goods to be sold, nor contain any of the elements of a sale. It leaves the whole contract, whatever it was, to be established by parol evidence. It is clearly within the Statute of Frauds. *Waterman v. Meigs*, 4 Cush., 497 ; *Jenness v. Mount Hope Iron Company*, 53 Maine, 20.

On the same day, June 17, 1870, Leonard answered the defendant's telegram, substantially as follows :

"Your telegram accepting our offer is received. I will send a memorandum of the offer to-morrow."

On the next day he sent the following letter :

"GENERAL OFFICE OF WASHINGTON ICE COMPANY,
393 and 395 Canal Street.

NEW YORK, June 18, 1870.

DEAR SIR: I inclose to-day the form of contract for ice purchased, &c. You will examine, and if found correct, you will sign, and inclose one copy by mail to us ; filling the blank, which, as you will perceive, is descriptive and not essential to the main question.

Very truly yours,

M. G. LEONARD, President."

NATHANIEL WEBSTER, Esq.

The form of the contract forwarded in the preceding letter was as follows :

"MEMORANDUM OF SALE.

Nathaniel Webster, of Gloucester, *Maine*, has sold to the Washington Ice Company, of the city of New York, all the good and merchantable shipping ice of the said Webster, consisting of about four thousand tons, more or less, being the same now housed in good and proper order, and condition on the shore of
at        in the State of Maine, referred to in an interview heretofore had by the said Webster with the president of said Company to be delivered by said Webster and properly stowed with sufficient dunnage at his expense on board vessels to be provided by the said company at the dock nearest to where said ice is stored, during the present summer, at the following prices to be paid by

said company by sight drafts, on receipt by them of bill of lading of each cargo, viz: Four dollars and fifty cents for each and every ton thereof weighed on delivery into the vessel, which prices the said company agree to pay at the time and in the manner specified.

Dated, June, 1870.

M. G. LEONARD, President."

(Internal Revenue Stamp, 5 cents.)

This contract was never signed by the defendant.

The letter enclosing this contract was addressed to Nathaniel Webster, Esq., Gloucester, *Maine,* and went to New Gloucester, Maine, arriving there on the 19th or 20th of June. On the twenty-second day of June it was forwarded to the defendant at Gloucester, Massachusetts.

The plaintiffs next sent the following telegram:

"NEW YORK, June 27, 1870.

To NATHANIEL WEBSTER, Gloucester, Mass.,

When may we expect a cargo? Have you received our contract?

M. G. LEONARD."

To this the defendant being absent, his clerk sent in reply the following despatch:

"GLOUCESTER, MASS., June 27, 1870.

To M. G. Leonard, President of Washington Ice Company, 393 and 395 Canal Street, New York.

Have received contract. Mr. Webster is away. Expect him home to-morrow.

CLERK."

On the thirtieth day of June, the defendant sent the following letter to the plaintiff:

"GLOUCESTER, MASS., June 30, 1870.

M. G. LEONARD, ESQ.,

DEAR SIR: Your letter and contract was received by me yesterday, June 29. Not hearing from you, I supposed you had purchased the ice you spoke of in our interview of the eastern man, and consequently after waiting one week, I disposed of my ice to other parties. Your letter instead of being directed to

Gloucester, *Mass.*, was directed to Gloucester, *Maine,* which may account for my not receiving it before.

Yours very respectfully,

Nath'l Webster, per C. H. C."

On the same day the plaintiffs sent the following letter to the defendant:

"General Office of Washington Ice Company,
393 and 395 Canal Street,

New York, June 30, 1870.

Dear Sir: If it will not be inconvenient to you to forward your ice during the month of July, we should prefer it· at that time, as our greatest sales occur in this month, and as most of our ice comes to us from a distance, we are not always sure of having a full supply on hand. I am aware that you named September as the time of delivery, and we do not demand it at an earlier day, unless it may be just as convenient to you to do. Please let me hear from you in reply. Truly yours,

M. G. Leonard."

To Nathaniel Webster, Gloucester, Mass.

The contract of sale to be binding by the Statute of Frauds, must be in writing. Thus far, in the process of the negotiation between the parties, there has been no note or memorandum setting forth the terms of any contract which has been signed "by the party to be charged thereby." The telegram of June 17, referring only to a verbal offer, was not binding any more than a verbal acceptance of a written offer upon the party so verbally accepting. *Smith v. Gowdy,* 8 Allen, 566.

June 18, 1870, the plaintiffs sent the form of a contract which "if found correct," they desired the defendant to sign. The contract, with its blanks to be filled, left it utterly uncertain to what ice it referred, or where the same was situated. This contract the defendant did not sign, for the reason alleged in his letter, that previous to receiving it, the ice had been sold. As this letter is introduced by the plaintiffs, assuming it true, there could not be a contract passing the title to them, even if it had been signed, for

the ice had then been sold and they would have purchased with a knowledge of such sale. But howsoever that might be, the plaintiffs' letter requires the blanks to be filled, and the contract to be signed, having previously thereto declined to reduce their offer to writing. It was the first time the plaintiffs had done anything by which their company might be bound. Until that time they legally were at liberty to take or refuse taking the defendant's ice. The defendant, too, was in similar condition as to selling. Not being previously bound, it was for the defendant to determine whether he would then become bound by signing the proposed memorandum of sale, or not, and he determined not so to sign. He cannot be bound by a written contract to which he never became a party.

The memorandum forwarded for signature provided for the delivery of the ice "during the present summer." By the letter of the president of the plaintiff company of June 30, the ice was to have been delivered in September. The memorandum, therefore, was variant from the verbal conversation. The defendant, therefore, might rightfully decline signing a written contract, different from the verbal conversation between the parties. *Richards v. Porter*, 6 B. & C., 437; *Hazard v. Day*, 14 Allen, 487; *Lyman v. Robinson*, 14 Allen, 242.

The case of *Carter et al. v. Bingham*, 32 Up. Can. R., 615, is in point. It was an action for non-delivery of fifteen bales of hops alleged to have been sold by defendant to plaintiffs, the evidence showing that in conversation with one of the plaintiffs about the purchase of hops, defendant said he would sell at twenty cents per pound, and would keep the offer open for a few days. Subsequently, on the 17th of August, plaintiffs telegraphed defendant, "will take 15 to 20 bales good new hops at 20 cents, cash." On the 21st, defendant replied by telegram, "Your offer accepted Have booked your order for fifteen bales new hops, for delivery when picked." On the 16th of September, defendant telegraphed: "Hops picked, ready for delivery. Answer back." On the 21st of September, plaintiffs telegraphed: "Our man will be there

ready to receive hops early next week;" and on the 26th of September, "Ship the 15 bales hops to us at Galt to-day, and draw at three days sight;" and on the 27th, "If hops not shipped, will send team and money for them to-morrow; answer quick." On the same day defendant answers: "Cannot have hops." A tender of the price was subsequently made and refused.

*Held*, I. That there was no binding contract at any time between the parties, for the defendant's answer of the 21st of August, was not a simple acceptance of the plaintiffs' offer of the 17th, but qualified it both as to quality (by leaving out the word good,) and as to time of delivery; and assuming defendants' telegram of the 16th of September to be a renewal of such acceptance, the plaintiffs' subsequent telegram did not show an assent to it. In delivering the opinion of the court, Morrison, J., says: "The rule of law I take to be, that an acceptance of a proposition must be a simple and direct affirmation, in order to constitute a contract, and if the party to whom the offer or proposition is made, accepts it adding any condition, with any change of its terms or provisions, which is not altogether immaterial, it is no contract until the party making the offer, consents to the modifications; that there can be no contract which the law will enforce until the parties have agreed upon the same thing in the same sense." The agreement must be entire—as to the thing sold, its price, the time of delivery, and the terms of payment. In the present case, no such agreement is shown. To the same effect are the cases of *Sievewright v. Archibald*, 17 Q. B., 103; *Gether v. Capper*, 14 Q. B., 39; *Hamilton v. Terry*, 11 C. B., 954.

There are one or two more telegrams introduced, but it is not perceived that they affect in any way the rights of the parties. The result is that the plaintiffs have failed to make out a sale "by any note or memorandum, signed by the party to be charged thereby."

It is urged that the plaintiffs have accepted and received the ice. To constitute an acceptance there must, first, be a delivery by the seller with intent to give possession of the goods to the

purchaser. Here, no act on the part of the defendant is shown, indicating such intention in the slightest degree. The letters and telegrams of the plaintiffs show a claim to the ice, and a desire for its delivery, but to such claim or desire the defendant never acceded.

The taking possession of the ice without, or against, his consent, is not a receipt or acceptance binding him. The forcible seizure of property sold, when the sale is void by the Statute of Frauds, cannot be deemed an acceptance or receipt within its provisions. If it were so, it would be to affirm judicially the rule that might makes right. Nor does the seizure of the ice by this writ of replevin, and a delivery of the same by an officer to the plaintiffs, constitute a statutory receipt, and an acceptance by the purchaser.

The defendant not having signed the memorandum of sale, transmitted for his signature, is not bound thereby. A seizure of the ice by force, or under color of legal process, without payment therefor, is not a receipt or acceptance thereof, within the Statute of Frauds. The plaintiff failing to show a legal title, the nonsuit must stand and a return be ordered. *Hoeffner v. Stratton*, 57 Maine, 360.

After a careful examination of the cases cited in the elaborate argument of the counsel for the plaintiffs, we think they fail to sustain the plaintiffs' right to maintain this suit, or to show a title in him to the property replevied.

By R. S., c. 96, § 11, "if it appears that the defendant is entitled to a return of the goods he shall have judgment and a writ of return accordingly, with damages for the taking and costs."

When the defendant makes a good title to the goods replevied, he is entitled to damages for the interruption of his possession, the loss of the use of the goods from the time of their replevin till their restoration, and for their deterioration. *Whitwell v. Wells*, 24 Pick., 34. Actual damages must be proved to entitle the defendant to recover more than nominal damages. "The cases in which six per cent. upon the value of the goods replevied has been allowed as damages, in analogy to the rule in other cases of unlawful

detention of property," observes Hoar, J., in *Bartlett v. Bricket,* 14 Allen, 62, "will be found to be cases where the defendant was entitled to a return, and where the chattels replevied were merchandise or other property capable of physical use or enjoyment." The damages, exclusive of the return of the goods or their equivalent in money, as secured by the bond, consists of interest upon the money value of the goods replevied up to the time of the verdict, and any special damages shown to result directly from their taking, in addition to such interest. *Stevens v. Tuite,* 104 Mass., 328. The damages for detention may exceed the interest upon the value of the property replevied; as in case of the replevin of a horse, or oxen, the defendant would be entitled to the value of their use, or for what their services in use would be worth. As in *Dorsey v. Gassaway,* 2 Har. & Johns., 402, where negroes were replevied without right, the defendant was held entitled to a sum equivalent to the value of their labor. The damages are to be assessed to the time of the verdict for the defendant, upon the principles adopted in trover, save that the value of the property is not to be included therein.

The measure of damages in trover is the value of the property at the time the right of action accrues with interest thereon. *Robinson v. Barrows,* 48 Maine, 188; *Pierce v. Benjamin,* 14 Pick., 356; *Kennedy v. Whitwell,* 4 Pick., 466. Such is the general rule as recognized in this State and in Massachusetts.

The expenses of procuring teams and appurtenances actually incurred for the purpose of removing ice, which were rendered useless by the wrongful suing out of the writ of replevin, may enter into and become a portion of the damages.

The damages arising from the possible loss of customers are too indefinite, remote and contingent to become an element of damages. *Brannen v. Johnson,* 19 Maine, 361.

If the defendant was liable on outstanding contracts which he was obliged to fulfill, it would be easy for him to replace the ice taken, by ice to be purchased, for which he would be obliged to pay only the fair value, which will be precisely what he will receive.

The damages being assessed to the time of the verdict, if the goods replevied are not forthcoming on demand on the writ of return, the defendant in a suit by him on the replevin bond will be entitled to recover as damages, the value of the goods replevied at the date of the demand on the writ of return with interest thereon, the damages and costs assessed in the replevin suit, and interest. *Swift v. Barnes*, 16 Pick., 194.

The assessment at the trial becomes important principally when the goods are *in esse* and may be returned on demand upon the writ of return; as, if they are not then assessed and the goods are returned and costs paid, the defendant has no further remedy on his bond. *Pettygrove v. Hoyt*, 11 Maine, 66.

In this State it has been repeatedly held when there is no return that the damages for the unlawful taking, which may not have been assessed in the replevin suit, may be recovered in a suit upon the bond. In *Dillingham v. Smith*, 32 Maine, 182, where upon report a nonsuit had been entered without an assessment of damages, Shepley, C. J., remarked that he considered damages recoverable in a suit upon the replevin bond. Subsequently the question came before the court in that case, in 33 Maine, 385, damages were allowed in a suit upon the bond from the time of taking at the rate of six per cent., no other or higher damages being claimed. In *Thomas v. Spofford*, 46 Maine, 408, the ruling of the court in *Smith v. Dillingham*, was affirmed and again re-affirmed in *Tuck v. Moses*, 58 Maine, 461. It seems, therefore, fully settled that in a replevin suit, when damages are not assessed at *nisi prius*, or where a nonsuit is entered, that the defendant, when the property replevied is not returned, may recover all damages sustained, in a suit upon the replevin bond.

The plaintiff in replevin is bound by his own valuation of the property replevied; not so the defendant, who may show the valuation too low, and in a suit upon the bond recover the actual value of the goods or other property taken wrongfully from his possession. *Thomas v. Spofford*, 46 Maine, 408.

So, he is bound by his replevin bond to restore the goods in like

good order and condition as when taken. He is responsible, if judgment is against him, for the damages or deteriorated condition of the goods when restored. *Berry v. Hoeffner,* 56 Maine, 171.

When goods not held under legal process are replevied, and after entry of the action the plaintiff becomes nonsuit and a return is ordered, but the goods replevied are not forthcoming on demand, the defendant in a suit on the bond is entitled to recover as damages, the value of the goods when taken, and interest thereon from the service of the writ to the time of the rendition of judgment. *Wood v. Braynard,* 9 Pick., 322 ; *Thomas v. Spofford,* 46 Maine, 408. So, where upon the evidence a nonsuit has been ordered, without any assessment of damages, and the goods replevied are not restored upon demand, or on the writ of return, the defendant may recover the damages sustained, which are to be assessed upon the same principle as they would have been if a verdict had been rendered when the nonsuit was ordered. *Dillingham v. Smith,* 30 Maine, 370 ; *Smith v. Dillingham,* 33 Maine, 384.

The defendant is entitled to a full indemnity for the taking and conversion of his property without right. When, at the time of the demand on the writ of return, the goods replevied are not returned, if they shall then be of an increased market value, the defendant is equitably entitled to such increase. The damages in such case may be assessed up to the time when judgment was rendered on nonsuit, as they would have then been by the verdict of a jury, if a nonsuit had not been ordered. Then the value of the goods replevied, or of goods of like description at the date of the demand on the writ of return with interest, with the damages at the time of nonsuit, and cost and interest will constitute the amount the defendant will be entitled to recover on his bond. *Tuck v. Moses,* 58 Maine, 461.

If the market value of the goods replevied shall be less at the time of the demand on the writ of return, than when the goods are taken the loss must fall on the plaintiff by whose wrongful act the defendant is deprived of his property. Besides, the plaintiff

having possession might have sold them, which the defendant could not do. *Gordon v. Jenney,* 16 Mass., 465.

The parties had a right to have damages assessed up to the time of trial at *nisi prius* by the jury. The defendant claimed that they should then be assessed. The plaintiff did not. The presiding justice denied to the defendant the right to have his damages assessed. In this he erred.

By the terms of the report if the action is not maintainable the nonsuit is to stand.

> *The nonsuit is to stand. Judgment for return of the goods replevied. Damages to the time of taking to be assessed at nisi prius, if the defendant so elect.*

CUTTING, DICKERSON, DANFORTH, VIRGIN and PETERS, JJ., concurred.