## LONG, Appellant, v. NEEDHAM, Respondent.

### (No. 2,543.)

(Submitted June 27, 1908. Decided July 18, 1908.)

[96 Pac. 731.]

*Specific Performance—Contracts—Letters and Telegrams— Equity—Defenses—Real Property—Description—Sufficiency Pleadings—Tender.*

Specific Performance—Letters and Telegrams—Contracts—When Complete.
1. Plaintiff, in a suit to enforce the specific performance of a contract for the sale of land, had forwarded to defendant a letter offering to buy the property at the price fixed upon it by defendant, adding the words, ''if this meets your approbation write me at once and say so, or better wire me, and follow with letter.'' Defendant unconditionally accepted the offer by telegram; but on the following day wrote plaintiff a letter varying the terms of his acceptance. *Held,* that defendant's telegram not having referred to a letter which was to follow, the minds of the parties met and a complete contract was created upon delivery of the telegram for transmission to plaintiff, and that defendant could not thereafter vary the terms agreed upon.

Contracts—Time of Payment—Option—In Whom.
2. Where one offered to purchase lands at a certain price, part to be paid in cash and balance in two or three years, and the vendor agreed to these terms, the vendee had the option to elect whether to make the deferred payment either in two or three years, under section 1970, Civil Code, which declares that where a promise is in the alternative, the right of election is with the promisor, unless otherwise provided in the agreement.

Specific Performance—Equity—Power to Enforce.
3. The doctrine that a court of equity will not grant the aid of specific performance when the party invoking it has not parted with any consideration or property, and no irreparable damage is suffered, and no fraud inflicted upon him, and when he is in *statu quo* at the time of the commencement of the action, has no application to the attempted enforcement of a written contract.

Same—Defenses.
4. The mere suggestion contained in a telegram sent to defendant by the purchaser of the land mentioned in paragraph 1 above, after his offer had been accepted, that he preferred a bank other than the one indicated by the vendor as the medium through which the business should be transacted, had to do with the matter of performance rather than with the creation of the contract, and could not defeat the right of the purchaser to have the contract specifically enforced.

Contracts—Breach—Defenses.
5. Merely because one party to a contract insists upon something to which he is not entitled thereunder, is no excuse for the other's refusal to carry it out according to its terms.

Same—Written—What may Constitute.
6. Where the minds of the parties to a contract for the purchase of land had fully met in letters and telegrams between them, an enforce-

able contract was made even though they may have contemplated that their views should afterward be reduced to a more formal writing.

Same—Specific Performance—Description of Property—Sufficiency.

7. *Held,* that the designation of the lands in writings which created a contract for their sale, sought to be specifically enforced, as the "Hays place" and the "Needham desert entry," was sufficient for the purpose of identification.

Specific Performance—Pleadings—Complaint—Tender.

8. It was not necessary to plead a tender, where the complaint, in a suit to enforce specific performance of a contract for the sale of land, showed that the defendant had refused to carry out the terms of the agreement and that a tender would have been useless.

*Appeal from District Court, Fergus County; E. K. Cheadle, Judge.*

ACTION by Willard A. Long against E. R. Needham for specific performance. From a judgment for defendant, entered on sustaining a demurrer to the complaint, plaintiff appeals. Reversed and remanded.

*Messrs. Walsh & Nolan,* and *Messrs. Blackford & Blackford,* for Appellant.

A valid contract for the sale of land may be embraced wholly in letters and telegrams concerning such land. (*Pollock* v. *Brainard,* 26 Fed. 732; *Hollis* v. *Burgess,* 37 Kan. 487, 15 Pac. 536; *Kempner* v. *Cohn,* 47 Ark. 519, 58 Am. Rep. 775, 1 S. W. 869.)

The letter of respondent confirming his telegram sent the day before and saying: "Rec'd your letter yesterday and sent telegram accepting your offer," was an unqualified acceptance of the offer as made and was manifestly intended so to be. (*Lawrence* v. *Milwaukee L. S. & W. R. Co.,* 84 Wis. 427, 54 N. W. 797; *Neufville* v. *Stuart,* 1 Hill Eq. 159; (S. C.); *Kennedy* v. *Gramling,* 33 S. C. 367, 26 Am. St. Rep. 676, 11 S. E. 1081; *Brophy* v. *Idaho P. & P. Co.,* 31 Mont. 279, 78 Pac. 493.) The contract between the parties stood from the moment the minds of both parties met upon the transmission of respondent's telegram of acceptance, capable of being enforced by either against the other. (*Tayloe* v. *Merchants' Fire Ins. Co.,* 9 How. (U. S.),

390, 10 L. Ed. 187; *Andrews* v. *Schreiber,* 93 Fed. 367; *Burton* v. *United States,* 202 U. S. 384, 385, 26 Sup. Ct. 688, 50 L. Ed. 1072; *Utley* v. *Donaldson,* 94 U. S. 29, 24 L. Ed. 54; *Sanders* v. *Pottlitzer Bros. F. Co.,* 144 N. Y. 209, 43 Am. St. Rep. 757, 39 N. E. 75, 29 L. R. A. 431.)

And this is so, and the contract is enforceable, even though the parties intended their agreement should be formally expressed in a single paper, and signed, as evidence of what they had already agreed upon. (*Sanders* v. *Pottlitzer Bros. F. Co.,* 144 N. Y. 209, 43 Am. St. Rep. 757, 39 N. E. 75, 29 L. R. A. 431; *Post* v. *Davis,* 7 Kan. App. 217, 52 Pac. 903; *Allen* v. *Chouteau,* 102 Mo. 309, 14 S. W. 869.)

The place of the delivery of the deed is a mere incident to the sale, and not necessarily a vital part of the terms of the contract. (*Pollock* v. *Brainard,* 26 Fed. 732; *Hollis* v. *Burgess,* 37 Kan. 487, 15 Pac. 536.)

Specific performance of a written contract may be enforced when it contains all the facts of the contract excepting such as may be legitimately proved by parol evidence. (*Colerick* v. *Hooper,* 3 Ind. 316, 56 Am. Dec. 507; *Hodges* v. *Kowing,* 58 Conn. 12, 18 Atl. 979, 7 L. R. A. 87; *Ross* v. *Purse,* 17 Colo. 24, 28 Pac. 473; *Towle* v. *Carmelo Land and Coal Co.,* 99 Cal. 397, 33 Pac. 1126; *Karns* v. *Olney,* 80 Cal. 90, 13 Am. St. Rep. 101, 22 Pac. 57; *Mead* v. *Parker,* 115 Mass. 413, 15 Am. Rep. 110; *Waring* v. *Ayres,* 40 N. Y. 357; *Post* v. *Davis,* 7 Kan. App. 217, 52 Pac. 903.)

The property which appellant desired to purchase is referred to in his letter making the offer to buy as "the Hays place" and "your desert filing." The lands comprising "the Hays place" and this "desert filing" to which the correspondence related may be shown by parol evidence, disclosing the circumstances of possession and ownership, the situation of the parties, their relations to each other and to the property at the time of the negotiations. (*Hurley* v. *Brown,* 98 Mass. 545, 96 Am. Dec. 671; *Mead* v. *Parker,* 115 Mass. 413, 15 Am. Rep. 110; *Robeson* v. *Hornbaker,* 3 N. J. Eq. 60; *Towle* v. *Carmelo Land & Coal Co.,*

99 Cal. 397, 33 Pac. 1126; *Colerick* v. *Hooper,* 3 Ind. 316, 56 Am. Dec. 505; *Bacon* v. *Leslie,* 50 Kan. 494, 34 Am. St. Rep. 134, 31 Pac. 1066; *Ives* v. *Hazard,* 4 R. I. 14, 67 Am. Dec. 500; *Old Colony R. Co.* v. *Evans,* 6 Gray, 25, 66 Am. Dec. 394; *Minneapolis etc. R. Co.* v. *Cox,* 76 Iowa, 306, 14 Am. St. Rep. 216, 41 N. W. 24; *Hodges* v. *Kowing,* 58 Conn. 12, 18 Atl. 979, 7 L. R. A. 87; *Kennedy* v. *Gramling,* 33 S. C. 367, 26 Am. St. Rep. 676, 11 S. E. 1081; *Waring* v. *Ayres,* 40 N. Y. 357.)

Under the circumstances of this case appellant was not required to allege a tender of the cash payment of the purchase price. (*Finlen* v. *Heinze,* 32 Mont. 389, 80 Pac. 918; *Christiansen* v. *Aldrich,* 30 Mont. 446, 76 Pac. 1007; *Cheney* v. *Libby,* 134 U. S. 68, 10 Sup. Ct. 498, 33 L. Ed. 818; *Pollock* v. *Brainard,* 26 Fed. 732; *McCullough* v. *Sutherland,* 153 Fed. 418; *Blanton* v. *Kentucky etc. Co.* (C. C.), 120 Fed. 318; *Brock* v. *Hidy,* 13 Ohio St. 306; *Wright* v. *Young,* 6 Wis. 127, 70 Am. Dec. 453.)

The complaint alleges that the defendant was the owner of the lands at the time of the making of the contract. This is sufficient in an action for specific performance of a contract for the sale of lands, without alleging he was the owner of them at the time of the filing of the complaint. (*Ide* v. *Leiser,* 10 Mont. 5, 24 Am. St. Rep. 17, 24 Pac. 695.)

Nor was it necessary for the complaint to allege that the plaintiff has no complete or adequate remedy at law in damages. (*Christiansen* v. *Aldrich,* 30 Mont. 446, 76 Pac. 1007; *Ide* v. *Leiser,* 10 Mont. 5, 24 Am. St. Rep. 17, 24 Pac. 695.)

*Messrs. Gunn & Rasch,* for Respondent.

The failure of appellant to designate the place of performance in his letter was not an omission merely of the "place of escrow," but a rejection by the appellant of the respondent's terms of acceptance. It was a rejection of the agency designated by the respondent, through which the transaction was to be carried on, and a counter-proposal by the appellant which required acceptance. It was a matter of substance on which no

agreement was reached until the delivery of respondent's letter of April 11, 1906, to the appellant. "An offer to deliver property at one place is not accepted when another place is named or proposed." (*Northwestern Iron Co.* v. *Meade,* 21 Wis. 474, 94 Am. Dec. 557; 9 Cyc. 267, 268, and notes 34 and 35 on page 268.)

Both the letter of appellant containing the offer, and the telegram of respondent provide for and require a contract in writing. According to appellant's letter a "deed and contract" were to be placed in escrow "until all is settled," and according to the telegram the papers were to be sent to the Fergus County Bank "for signature." "If by agreement of the parties their negotiations are to be reduced to writing there will be no perfect contract so long as the act of reducing it to writing and signing it remains to be done." (*Congdon* v. *Darcey,* 46 Vt. 478; *Sidney Glass Works* v. *Barnes,* 86 Hun, 374, 33 N. Y. Supp. 508; *Wood* v. *Edwards,* 19 Johns. 212; *Jersey City Water Co.* v. *Brown,* 32 N. J. L. 504; *Avendano* v. *Arthur,* 30 La. Ann. 316; *Methudy* v. *Ross,* 10 Mo. App. 101; affirmed 81 Mo. App. 481; *Brown* v. *New York Cent. Ry. Co.,* 44 N. Y. 79.)

The alleged contract could not be specifically enforced by respondent against appellant in any of the particulars wherein it had been modified. Unless the parties agree to all material matters, specific performance will not be decreed. (*Finlen* v. *Heinze,* 32 Mont. 386, 80 Pac. 918; *Walcott* v. *Watson,* 53 Fed. 429; *Duff* v. *Hopkins,* 33 Fed. 599; *Manning* v. *Ayers,* 77 Fed. 690, 23 C. C. A. 405; *Hackey* v. *Oakford,* 98 Fed. 781, 39 C. C. A. 284; *Washington Ice Co.* v. *Webster,* 62 Me. 341, 16 Am. Rep. 462; *De Jonge* v. *Hunt,* 103 Mich. 94, 61 N. W. 341; *Langellier* v. *Schaefer,* 36 Minn. 361, 31 N. W. 690; 9 Cyc. 248 *et seq.*) A proposal to accept, or an acceptance upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation, unless the party making the original offer renews it, or assents to the modification suggested. It is a new proposal, which must in its turn be accepted by the party making the original offer. (5 Current Law, 672, citing *Doherty*

v. *Arkansas & O. R. Co.*, 5 Ind. Ter. 537, 82 S. W. 899; *Powers* v. *Rude,* 14 Okl. 381, 79 Pac. 89; see, also, *Strang* v. *Richmond P. C. R. Co.*, 93 Fed. 71; *Cooper* v. *Pena,* 21 Cal. 404; *Anson* v. *Townsend,* 73 Cal. 415, 15 Pac. 49.)

While it is true that an oral agreement, complete in all its essential details, may be binding, even though it is contemplated that the agreement shall be reduced to writing, yet where the terms of the negotiations show that certain matters are still under consideration, and where the intention is expressed by both parties that there shall be a formal written agreement between them, there is no subsisting obligation on either party so long as the act of reducing it to writing and signing it remains to be done. (*Spinney* v. *Downing,* 108 Cal. 666, 41 Pac. 797; *Morrill* v. *Tehama etc. Co.*, 10 Nev. 125; *Mississippi etc. Steamship Co.* v. *Swift,* 86 Me. 248, 41 Am. St. Rep. 545, 29 Atl. 1063.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Willard A. Long, the plaintiff and appellant, resides at Lewistown, in Fergus county, Montana. The defendant and respondent, Needham, resides at Omaha, Nebraska. Needham owned certain lands in Fergus county which he desired to sell. Prior to April, 1906, there had been certain negotiations carried on. On April 4th Long wrote to Needham as follows:

"Lewistown, Mont., April 4th, '06.
"Mr. E. R. Needham,
    "2010 Emmet St., Omaha.
"Dear sir: Yours of 30 ult. at hand, stating that you would take $12,500 net for the Hays place and would also transfer to me your desert filing. That there is 90 acres broken on the Hays place and that you will guarantee 50 acres plowed this summer which you say is already settled for. I will give you your price, $12,500 net, provided you would take $5,000 cash down balance in two or three years at 6 per cent. interest. Deed and

contract being placed in escrow until all is settled. If this meets with your approbation write me at once and say so, or better wire me, and follow with letter.

"Respectfully,

"WILLARD A. LONG, M. D."

This letter reached Omaha April 9th, and on the same day Needham replied by telegram as follows:

"Willard A. Long, M. D.,

    "Lewistown.

"Offer accepted, will send papers Fergus County Bank for signature.                      E. R. NEEDHAM."

Upon receipt of this telegram on April 10th, Long telegraphed to Needham: "Prefer to have papers and business transacted with First National Bank of Lewistown." And this suggested change of a medium through which the details should be carried out was assented to by Needham in a letter dated April 13th, but on April 10th Needham wrote to Long this letter:

"Rec'd your letter yesterday, and sent telegram accepting your offer of $12,500. Now I did not tell you that Mr. Doores had a lease for two years on the ranch, but I suppose this will suit you, as I imagine you want the place for speculation. I have also somewhere in the neighborhood of 100 tons of hay or should have on the place, which I will sell. I also have some hay-rakes, a good sulky plow and other farming tools which I would like to sell you. Please send me the necessary papers to sign over my right to the filing I made on the 160 acres desert, and I will then send deed and real estate mortgage due in two years at 6% to the Fergus Co. Bank. I do not care to go to the expense of coming way out there if I can avoid it.

"Yours truly,

. "E. R. NEEDHAM."

Further correspondence followed, and finally on May 2d, Needham notified Long that he refused to proceed further. This suit was then commenced to enforce the specific performance of the contract which Long alleges had been made. The com-

plaint sets forth fully the correspondence bearing upon the subject. To this complaint the defendant interposed a general demurrer, which was sustained, and plaintiff, declining to plead further, suffered judgment to be entered against him, from which judgment he appeals.

There is in reality but a single question presented for solution, viz.: Did the plaintiff and the defendant enter into a contract? Plaintiff contends that his letter of April 4th contains a specific offer, and that defendant's telegram of April 9th was a complete, definite and unconditional acceptance of that offer, and that the two instruments evidence a complete contract. The defendant contends that, since Long's letter of April 4th requested that the answer be by telegram followed by a letter, the telegram of April 9th and the letter of April 10th sent by Needham must be construed together as constituting his reply to Long's offer; and, since the letter of April 10th contained conditions in the nature of counter proposals, there never was in fact a meeting of minds, and therefore there never was a contract. The solution of the question before us depends entirely upon which of these views be adopted. The trial court apparently adopted the defendant's view; but we are not able to reach the same conclusion.

Prior to April 4th Long had been fully informed as to the character and extent of the land, and as to the price set upon it by Needham, so that there could not be any open question, except as to the terms of payment. Long's offer in his letter of April 4th is specific as to these terms. It amounts to this: "I will give you your own price, provided you accept $5,000 cash, $7,500 in two or three years, with interest at six per cent deferred payment to be secured by deed placed in escrow." Needham's telegram amounts to this: "I will accept $5,000 cash and $7,500 payable in two or three years, with interest at six per cent deferred payment to be secured by deed in escrow," or, in other words, the acceptance is in the exact language of the offer; and, if these two instruments alone are

·considered, there cannot be any question that a contract was ·entered into.

In Bishop on Contracts, section 322, the rule is stated as follows: "If one makes to another an offer, verbal or written, direct, by letter, or by telegram, of a sort implying nothing to be ·done except to assent or decline, and the latter accepts it, adding no qualification, there is thus constituted a mutual consent to the ·same thing at the same time; in other words, a contract." This ·rule is a general one, and recognized by the courts everywhere. In 9 Cyc. 265, it is said: "The offerer has a right to prescribe ·in his offer any conditions as to time, place, quantity, mode of ·acceptance, or other matters which it may please him to insert ·in and make a part thereof, and the acceptance, to conclude ·the agreement, must in every respect meet and correspond with ·the offer, neither falling within or going beyond the terms proposed, but exactly meeting them at all points and closing with ·them just as they stand."

But defendant insists that his letter of April 10th, varying the terms of his acceptance as contained in his telegram, must be considered a part of the telegram, and therefore a part of his answer to Long's offer. Ordinarily such a contention would not be urged; for it is elementary that, when once the minds of the parties meet, neither can thereafter add to or subtract from the terms agreed upon without the consent of the other. But the defendant insists, and not without some show of reason, that Long specifically directed that the telegram be followed by a letter, and therefore impliedly agreed to treat the letter as a part of the reply to his offer. But in this the defendant overlooks what to us appears to be a very significant portion of Long's letter. After detailing the terms of his offer, he says: "If this meets your approbation, write me at once and say so, or better wire me, and follow with letter." If this language means anything, it means that Needham was to answer only in the event the offer as made proved to be acceptable to him; otherwise a reply was not expected. The only reply which Long sought was one accepting his offer as made.

His language cannot be made to mean anything else. The word "approbation" means "the act of approving; an assenting to the propriety of a thing with some degree of pleasure or satisfaction; approval; sanction; commendation." To "approve" means "to sanction officially; to ratify; to confirm." (Webster's International Dictionary.)

It may be suggested that, unless Long intended to treat both the telegram and letter as constituting the reply to his offer, there was not any reason for his calling for both. On the other hand, it certainly cannot be contended that Long sought an acceptance to his offer by telegram and a repudiation of the acceptance by mail. The only reasonable construction to be given his letter is that he desired Needham to take the extra precaution of employing both means of communicating his acceptance. That Long did not expect a letter unless it contained an acceptance of his offer as made is manifest; for in the first instance he says, "If this meets with your approbation, write me at once and say so"—not say something else. It was only on condition that his offer as made met with Needham's approval or acceptance that either a telegram or a letter was to be sent; and, if the offer did meet with Needham's approval, he was to say so.

If the letter of April 10th formed a part of Needham's reply to Long's offer, then it was binding upon Long from the moment it was mailed at Omaha (5 Current Law, 673, and cases cited) ; and, in the event it had been lost in transmission through the mail and had never reached its destination, we would have presented this anomalous situation: Long had made a definite offer, and had in his hands Needham's unqualified acceptance by telegram, and yet Long would not be able to determine whether he had entered into a contract or not. If Needham's telegram had referred to a letter which was to follow, Long would then have been put upon notice that he must await the arrival of such letter and would be bound by it. This is all that is decided in *Runyan* v. *Wilkinson-Gaddis Co.,* 57 N. J. L. 420, 31 Atl. 391. The statement contained in Need-

ham's telegram, "Will send papers Fergus County Bank for signature," of course, cannot refer to his letter, but must be held to refer to the papers mentioned in Long's letter as necessary to carry out the terms of the agreement. If a contract was made at all, it was complete upon the delivery of the telegram at Omaha for transmission to Long at Lewistown. (9 Cyc. 295, and cases cited.)

We hold that, upon the delivery of that telegram for transmission, the minds of the parties met, and the defendant could not on the following day vary the terms already agreed upon; and that Needham himself believed that the contract had been completed upon sending his telegram, is made manifest to us, for in his letter of April 10th he says: "Rec'd your letter yesterday and sent telegram accepting your offer," etc. Then he proceeds, evidently upon the assumption that he had made a sale of his ranch to Long, to try to sell Long some personal property which he, Needham, had upon the ranch. His contention for a mortgage to secure the deferred payment, after he had agreed upon something else, appears to us to be but an afterthought.

There might easily arise an honest difference of opinion as to who had the right to elect whether the deferred payment should be made in two or in three years; but this has to do with the construction of the contract, and not with the making of it. Under the terms of Long's offer and Needham's acceptance, as well as upon well-settled principles of law, we think that Long had the option to pay within two or three years. His offer is to the effect that he will make such payment in two or three years, and Needham's reply to this is, in effect: "You may do so"; that is, "You may make the payment either in two or three years, at your option." Section 1970 of the Civil Code provides: "If an obligation requires the performance of one of two acts in the alternative, the party required to perform has the right of selection, unless it is otherwise provided by the terms of the obligation." This same general rule is expressed in the Encyclopedia of Law as follows: "Where

the promise is in the alternative, as to do a thing in one way or another, or on one day or another, the right of election is with the promisor, in the absence of an express provision in the agreement which controls.'' (7 Am. & Eng. Ency. of Law, 2d ed., 125.)

It is suggested by counsel for respondent that ''a court of equity will not grant the aid of specific performance when the party invoking its aid has not parted with any consideration or property, and no irreparable damage is suffered, and no fraud is inflicted upon him, and when he is *in statu quo* at the time of the commencement of his action''; and *Howes* v. *Barmon,* 11 Idaho, 64, 114 Am. St. Rep. 255, 81 Pac. 48, 69 L. R. A. 568, is cited in support of this view; but that language was employed in considering the question of the specific performance of a contract in parol, and the doctrine does not have any application to the attempted enforcement of a written contract. (*Christiansen* v. *Aldrich,* 30 Mont. 446, 76 Pac. 1007.)

Counsel for respondent in their brief say that the appellant himself prevented the consummation of the contract (1) in refusing to give a mortgage to secure the deferred payment or make some other provision for security; (2) in rejecting the provision selected by defendant for payment of balance in two years and offering payment in three years; (3) in stipulating that the note for the deferred payment should be placed in escrow for three years; (4) in changing the place where the papers were to be kept in escrow from the Bank of Fergus County to the First National Bank of Lewistown; (5) in changing the name of the person to whom the desert entry should be assigned.

(1.) Appellant's offer was not to give a mortgage to secure the deferred payment, but to have the deed placed in escrow, and this was agreed to by respondent in his telegram of April 9th.

(2.) As we have already said, the option was not with the respondent, but with the appellant, to determine whether the deferred payment should be made in two or three years.

(3.) There was not any reference to a note in the contract made by Long's letter of April 4th and Needham's telegram of April 9th.

(4.) In his telegram of April 9th Needham designated the Fergus County Bank as the agency through which the business should be transacted. Upon receipt of this, Long telegraphed suggesting in lieu of that institution the First National Bank of Lewistown. But this suggestion has to do with the matter of performance, rather than with the creation of the contract. It is not an element of the contract at all. (*Pollock* v. *Brainard* (C. C.), 26 Fed. 732; *Hollis* v. *Burgess*, 37 Kan. 487, 15 Pac. 536.) In *Turner* v. *McCormick*, 56 W. Va. 161, 107 Am. St. Rep. 904, 49 S. E. 28, 67 L. R. A. 853, there is an extended review of the authorities relating to offers and acceptances which have been held to constitute, or not to constitute, enforceable contracts. McCormick made an offer to sell certain coal in the vein to Turner. Turner's acceptance was as follows:

"Morgantown, W. Va., Feb. 21, 1902.
"Mr. William McCormick:

"I hereby notify you that your coal will be accepted according to the terms of the option given to me on same and respectfully request you to make delivery of deed, with abstract of title, to me, in Morgantown, W. Va., on Saturday, June 28th, 1902, hour and place to be decided later.

"Yours truly,

"E. D. TURNER."

McCormick refused to convey, and a suit for specific performance resulted. The court said: "Two objections to the written acceptance are urged. One of these relates to the first clause, and is that its language relates to the future, and imports a promise to accept, and not to notice of a completed acceptance. The other objection is that the request that deed be made on June 28, 1902, in Morgantown, at an hour and place thereafter to be decided, superadded to the alleged notice of acceptance, made it conditional, and not absolute by attempt-

ing to introduce new terms into the proposed contract. Acceptance of the first option gave the right to have immediate performance, and allowed no time to the vendor in which to perform thereafter. Absolute acceptance of the second option would have included, as one of the terms thereof, an agreement that the vendor should have ninety days within which to tender the deed. As it required acceptance on or before the first day of March, 1902, and performance within ninety days thereafter, the request or condition in the notice that the deed be delivered on the twenty-eighth day of June, 1902, named a date more than ninety days after the first day of March, the limit for acceptance, and one more than ninety days after the notice of acceptance.'' After disposing of the first of these objections, it is then said: ''Property rights are sacred and should be well guarded by the law; but, when a man has deliberately made a fair contract of sale, he ought not to be permitted to avoid it on some flimsy pretext in order to avail himself of a better bargain. Time and place of payment, when not mentioned in the accepted offer, are fixed by law, and are matters of performance, carrying out the contract—a thing wholly distinct and separate from the making of the agreement. If, contemporaneously with or subsequent to the making of the contract, either party suggest, request, or propose a time, place, or mode of performance different from that agreed upon, that does not of itself effect such change, nor does it cause a breach, giving right of action or rescission to the other party. (*Swiger v. Hayman et al.,* 56 W. Va. 123, 107 Am. St. Rep. 899, 48 S. E. 839.) Either can compel the other to perform the contract as made. He may ignore the suggested, requested, or proposed alteration of or deviation from the contract, as to the performance thereof.'' And, again, after reviewing the authorities at length, the court, in holding that Turner's acceptance created an enforceable contract, concludes: ''This somewhat lengthy review of the authorities bearing upon the question seems to establish the following propositions: First, a request for a change or modification of a proposed contract, made before an accept-

ance thereof, amounts to a rejection of it; second, a mere inquiry as to whether the proposer will alter or modify its terms, made before acceptance or rejection, does not amount to a rejection, and, if the offer be not withdrawn before acceptance made within a reasonable time, the offer becomes a binding contract; third, a request, suggestion, or proposal of alteration or modification, made after unconditional acceptance, and not assented to by the opposite party, does not affect the contract put in force and effect by the acceptance, nor amount to a breach thereof, giving right of rescission; fourth, acceptance of a formal and carefully prepared option of sale of land, within the time by it allowed, and according to its terms, although accompanied by a request for a departure from its terms as to the time and place of performance, is an unconditional acceptance, and converts the option into an executory contract of sale, provided the request be not so worded as to limit or qualify the acceptance.''

(5.) It is also true that in the subsequent correspondence Long suggested that the Needham desert entry should be transferred to Mrs. Bach; but this had nothing whatever to do with the question of the existence of a contract, but rather with the rights of the parties under the contract, and because Long insisted upon something to which he was not entitled is not an excuse for Needham's refusal to carry out the contract according to its terms. Upon the face of the complaint, Long is entitled to the specific performance of the contract according to its legal effect, not according to the interpretation which he may see fit to give it.

But it is contended by respondent that the parties manifestly intended that their views should be embodied in a formal written agreement, and that, unless such agreement was actually signed, the negotiations are to be treated merely as preliminaries. This subject is treated at length and the authorities cited by counsel for both of these parties, and many other authorities are collected in 9 Cyc. 280, where it is said: ''Where parties are merely negotiating as to the terms of an agreement to

be entered into between them, there is no meeting of minds while such agreement is incomplete. Thus, where they intend that their verbal negotiation shall be reduced to writing as the evidence of the terms of their agreement, there is nothing binding on them until the writing is executed. And the same is true in other cases of preliminary negotiation. An agreement to be finally settled must comprise all the terms which the parties intend to introduce. An agreement to enter into an agreement upon terms to be afterward settled between the parties is a contradiction in terms. It is absurd to say that a man enters into an agreement till the terms of that agreement are settled. Generally speaking, the circumstance that the parties did intend a subsequent agreement to be made is strong evidence that they did not intend the previous negotiations to amount to an agreement. * * * On the other hand, an agreement to make and execute a certain written agreement, the terms of which are mutually understood and agreed upon, is in all respects as valid and obligatory as the written contract itself would be if executed. If, therefore, it appears that the minds of the parties have met, that a proposition for a contract has been made by one party and accepted by the other, that the terms of this contract are in all respects definitely understood and agreed upon, and that a part of the mutual understanding is that a written contract embodying these terms shall be drawn and executed by the respective parties, this is an obligatory agreement.''

In 5 Current Law, 665, 666, the same doctrine is announced as follows: ''It is not necessary, in order to make a written contract, that the terms thereof be reduced to writing in a formal way on one piece of paper, but it is sufficient if a written offer by or on behalf of one party is accepted by or on behalf of the other, and the language used shows a meeting of the minds on some particular subject-matter. * * * An agreement to contract is, of course, not a final contract because something is left open. Thus, where the parties make the reduction of the contract to writing and its signature by them a condition pre-

cedent to its completion, it will not be a contract until it is reduced to writing and signed. But, where they assent to all of its terms, the mere reference to a future contract in writing will not negative the existence of a present and completed one.'' We think that, when the minds of the parties have met and their views are already expressed in writings which, taken together, fully express those views, an enforceable contract is made, even though the parties may have contemplated that such views should afterward be reduced to a more formal writing.

We agree fully with counsel for respondent that the rule announced in *Washington Ice Co.* v. *Webster,* 62 Me. 341, 16 Am. Rep. 462, as follows: ''The agreement must be entire as to the thing sold, its price, the time of delivery and the terms of payment''—is correct, and, according to our views, the agreement between these parties completely meets those requirements.

The designation of the land as the ''Hays place'' and the ''Needham desert entry'' was sufficient. (*Pollock* v. *Brainard,* and *Hollis* v. *Burgess,* above.)

By Needham's last letter it appears that he was not relying upon the fact that a contract had not been made, but was dissatisfied with certain terms which Long sought to impose upon him in carrying out the contract; for he says: ''There was some conditions that you wanted to make in your settlement that were not as I made in my proposition to you, so I refuse your offer of $12,500''; and, while this is not conclusive, it is a matter for consideration by this court as throwing light upon the conduct of the parties themselves.

It was not necessary to plead a tender, since the complaint shows that the defendant had refused to carry out the terms of the contract and that a tender would have been useless. (*Finlen* v. *Heinze,* 32 Mont. 354, 80 Pac. 918; *Christiansen* v. *Aldrich,* above.)

We are of the opinion that the complaint states a cause of action and that the demurrer should have been overruled. The

cause is remanded to the district court, with directions to set aside the judgment, vacate the order heretofore made, and overrule the demurrer.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

Rehearing denied October 20, 1908.