[Civ. No. 2723.   Third Appellate District.—May 23, 1924.]

## G. J. HOLLENBECK, Respondent, v. W. H. LUNDER-VILLE, Appellant.

[1] CONTRACTS—PURCHASE OF TRACTOR—ALLEGED AGREEMENT—FIND-ING—EVIDENCE—APPEAL.—In an action by an assignee of a vendor based upon a contract for the purchase of a tractor, the evidence having been sufficient to support the findings of the trial court negativing the existence of an alleged agreement that appellant was to purchase the tractor as 'agent of said assignee and that appellant was to pay for the tractor out of proceeds of crops to be raised upon lands to be leased to appellant by said assignee, such findings are binding and will not be disturbed upon appeal.

[2] ID.—PROVISION FOR EXECUTION OF NOTES AND LEASE—FAILURE TO EXECUTE NOTES AND LEASE—EFFECT UPON INSTRUMENT AS VALID CONTRACT.—The omission to have notes executed evidencing deferred payments and a lease signed by the purchasers of a tractor, which notes and lease were to be executed according to an instrument signed by said purchasers and accepted by the vendor, did not deprive said instrument of the strength of a binding and subsisting contract where it contained a full and complete description of the property, the terms of payment, and warranty by the vendor, a reservation of title in the vendor until payment should have been fully made and completed, a statement of all of the rights of the respective parties, and it as fully and completely fixed the legal rights of the respective parties as though the notes and lease referred to had been executed and delivered, the provision for the execution of the notes and lease being simply for the giving to the vendor of additional evidence of the amount and purchase price and of the title or property interest conveyed to the purchaser and retained by the vendor.

[3] ID. — CONSTRUCTION — OFFER.—The instrument in question having contained a full statement of all the terms and conditions of the proposed purchase and sale of the tractor and having also contained a stipulation that upon acceptance by the vendor it should become a valid contract, and having been signed by the purchasers before it had been signed by the vendor, it was not a mere offer.

1.   See 2 Cal. Jur. 918; 2 R. C. L. 202.
2.   See 6 Cal. Jur. 58; 6 R. C. L. 618.
3.   See 6 Cal. Jur. 47, 61, 252; 6 R. C. L. 605.

[4] ID.—TIME OF GOING INTO EFFECT OF AGREEMENT—INTENT—SUBSE-
QUENT FORMAL AGREEMENT.—Where parties make an agreement
which they intend shall be binding from the time it is made,
effect will be given to it from that time though they, also, intend
that it shall be superseded by a more formal written agreement.

[5] ID.—PROMISSORY NOTES—DISCHARGE OF DEBT.—The cause of ac-
tion on a promissory note for a debt does not discharge the debt
unless it is expressly so agreed.

[6] ID.—NEW TRIAL—DENIAL OF—ABSENCE OF ERROR.—In such action,
the affidavits presented to the trial court upon defendant's motion
for a new trial based upon newly discovered evidence having set
forth only that which was cumulative, the trial court did not
commit any prejudicial error in denying the defendant's motion
based thereon.

(1) 4 **C. J.**, p. 877, sec. 2853.    (2) 35 **Cyc.**, p. 87.    (3) 35 **Cyc.**,
p. 87.    (4) 13 **C. J.**, p. 291, sec. 100, p. 292, sec. 100.    (5) 30 **Cyc.**,
p. 1196.    (6) 4 **C. J.**, p. 1060, sec. 3046; 29 **Cyc.**, p. 1196.

APPEAL from a judgment of the Superior Court of Sac-
ramento County.   C. P. Vicini, Judge Presiding.   Affirmed.

The facts are stated in the opinion of the court.

White, Miller, Needham & Harber for Appellant.

Theodore W. Chester for Respondent.

PLUMMER, J.—Plaintiff had judgment in the court be-
low against the defendant Lunderville, and from this judg-
ment said defendant appeals.

The action instituted and prosecuted by the plaintiff is
based upon a certain contract entered into between the de-
fendants and the Holt Manufacturing Company of the city
of Stockton for the purchase of a certain caterpillar trac-
tor, and assigned to the plaintiff, which contract is in words
and figures as follows, to wit:

4.   See 6 Cal. Jur. 58; 6 R. C. L. 618.

5.   See 8 Cal. Jur. 1054; 19 Cal. Jur. 924; 21 R. C. L. 70.

6.   What is cumulative evidence within rule excluding it when
offered in support of motion for new trial, note, **Ann. Cas. 1913D, 157.**
See, also, 20 R. C. L. 297.

"Deliveries are subject to the Acts or the demands of the Government of the United States of America.

"C A T E R P I L L A R

"Reg. Trademark U. S.

"Pat. Off.

"Territory: Block 9.

"Shipped Oct. 22, 1919 Traction Engine No. 20839, Order No.

G-41421

"Car No. W.P.2050.                    $5375.00/100

"FORTY-FIVE

"The Holt Manufacturing Company, a Corporation, Stockton, California. Manufacture and ship to the undersigned One 'Caterpillar' Standard Gasoline Traction Engine Motor Forty-Five H. P.

Four Cylinders 6x7.                    Width Tract 28

·'Equipped with Canopy Top and Side Curtains Two speeds forward.

"Stationary Attachment

"Lighting System.

"Consign to Johnson Bros and Lunderville. To be shipped by S. P. to Sacramento Station, on or about Oct. 23, 1919. Free on Board cars or boat at Stockton, California, U. S. A., for which the undersigned agrees to pay Fifty Three Hundred Seventy-Five and no/100 Dollars as follows:

"One Thousand Two Hundred Fifty and 00/100 Dollars * * * with the order;

"One Thousand Two Hundred Fifty and 00/100 Dollars * * * 1 month after date of shipment;

"Six Hundred and 00/100 Dollars —— 3 months after date of shipment;

"Six Hundred and 00/100 Dollars —— 6 months after date of shipment;

"Six Hundred and 00/100 Dollars —— 9 months after date of shipment;

"Balance —— 12 months after date of shipment; with interest from one month after date of shipment until paid, at the rate of eight (8) per cent per annum.

"Subject to a discount of five (5) per cent for all cash date of shipment.

"All payments to be made in Gold Coin, San Francisco or New York Exchange, to The Holt Manufacturing Company (a corporation), at its office, Stockton, California.

"Deferred payments as above recited to be evidenced by notes and lease made, executed and delivered to The Holt Manufacturing Company in the form required by said company on arrival or delivery of said 'Caterpillar' Traction Engine at destination designated above, but no such note or lease shall be deemed as in payment until the same shall have been actually paid in lawful money.

"Warranty: The 'Caterpillar' Traction Engine hereinabove specified is warranted to deliver 45 brake-horse-power and do the work of 22 average horses under reasonable conditions, at sea level. If inside of six days from date of unloading at destination the said 'Caterpillar' Traction Engine should prove incapable of meeting this warranty, the undersigned shall give notice, by registered letter or telegram, to The Holt Manufacturing Company at Stockton, California, U. S. A., stating wherein the said 'Caterpillar' Traction Engine fails, and shall allow a reasonable time for the company to send a man to remedy the cause, if any, the undersigned rendering necessary and friendly assistance. If the said 'Caterpillar' Traction Engine cannot then be made to meet, substantially, the above warranty, the undersigned shall return the said 'Caterpillar' Traction Engine F. O. B. cars or boat at shipping point where received, and The Holt Manufacturing Company shall return all notes or money given in payment except freight charges one way, which, when done, shall be a complete settlement of the entire transaction. Failure to give notice as above, or the continued possession or operation of the said 'Caterpillar' Traction Engine beyond the period of six days above mentioned, shall be conclusive evidence that the said 'Caterpillar' Traction Engine fills the warranty.

"Should any parts prove defective within six months from date of delivery, through defective material or inferior workmanship, replacements shall be made by The Holt Manufacturing Company, F. O. B. cars or boat at Stockton, California, U. S. A. The parts claimed to be defective are to be returned prepaid to The Holt Manufacturing Company at its factory in Stockton, California, U. S. A., for inspection, and if found defective as claimed, the charge if made for the new parts shall be remitted.

"It is hereby expressly understood and agreed that The Holt Manufacturing Company shall not in any case or under any circumstances be held liable or responsible for any damages or personal injuries suffered or sustained in the use,

operation or handling of said 'Caterpillar' Traction Engine or otherwise, no matter how caused or occasioned; nor for any implied warranties; nor for any loss of profits, expenses or damages resulting to the undersigned by reason of any delays or non-performance of said 'Caterpillar' Traction Engine, or from any other causes whatsoever; that all such claims are hereby specifically waived; and that the liability of The Holt Manufacturing Company shall be limited to the warranty as to horse power and to the replacements of such parts shown to be defective under the warranty as above made, and then only in the manner and to the extent hereinabove specified.

"And it is hereby expressly understood and agreed that until The Holt Manufacturing Company does part with the title thereto, as herein provided, the undersigned will keep said 'Caterpillar' Traction Engine in first class condition, good order and repair, and will not remove, transport, ship, drive or take said 'Caterpillar' Traction Engine or cause or suffer the same to be removed, transported, shipped, driven or taken from the State to which the same is originally shipped by The Holt Manufacturing Company, without the consent of The Holt Manufacturing Company first had and obtained in writing.

"And it is understood and agreed that The Holt Manufacturing Company does not part with the title to said 'Caterpillar' Traction Engine, but retains and holds the title and ownership thereof absolutely, until all said deferred payments or notes are fully paid; that time is of the essence of this agreement and it being expressly understood that any default in any of the deferred payments or notes, or any of the terms or conditions hereof, shall, at the option of The Holt Manufacturing Company, cause and render all payments or notes to become immediately due and payable; that should the undersigned make default in any of said payments, terms or conditions, then The Holt Manufacturing Company may AT THEIR OPTION, and without notice, terminate this agreement, and with or without legal process take and retain said 'Caterpillar' Traction Engine wherever it may be situated, and all moneys, paid by the undersigned prior to such default shall be retained by The Holt Manufacturing Company as compensation for the privilege of using said 'Caterpillar' Traction Engine by the undersigned prior to such default; and should The Holt Manufacturing Company by reason of such default incur any

expense, the undersigned agrees to reimburse them the sum total of all such expenses, including reasonable counsel fees.

"The undersigned agrees to pay and discharge all City, County and State Taxes that may be assessed against said 'Caterpillar' Traction Engine, and also all Statutory liens upon said 'Caterpillar' Traction Engine.

"And it is further understood that no representative or agent has any power to make any additions to or vary the terms and conditions hereof. This offer shall not be binding until it is submitted to and duly accepted by The Holt Manufacturing Company at its office in Stockton, California, U. S. A.; and that when so accepted it shall become a California contract and construed in accordance with the laws of the State of California.

"I herewith declare that I have carefully read the foregoing instrument, and am acquainted with its contents, which I hereby accept.

"Dated the 22 day of Oct., 1919

"Postoffice Courtland

"County Sac., State Cal.,     W. H. Lunderville.

"This order sent in by     J. C. Johnson,     Read

Hollenbeck & Talbot     H. C. Johnson     Before

Approved by R. E. Mam.                    Signing.

"Credit Manager.

"Accepted by The Holt Manufacturing Company this 23rd day of October, 1919 by Thores Luke

"Manager-Sales Manager.

"(Form 162 8-18)

"(Reverse side).

"Oct. 23d 1919 Rec'd on within contract........$1250.00

"Stockton, California,
"October 23rd, 1919.

"For value received, we assign the within Contract unto G. J. Hollenbeck, without recourse to us.

"THE HOLT MANUFACTURING COMPANY, INC.,

"By (signed) ———————

"Treasurer."

It appears from the testimony that Walter J. Talbot was the district agent for the Holt Manufacturing Company for the Sacramento district and that the plaintiff was the special agent acting with him in the selling of tractors. It appears from the transcript that prior to any negotiations concerning the tractor in question, the plaintiff had rented from the Johnson estate 160 acres of land situated in what is known as the by-pass district; that this land was unbroken and was then covered by tules; that at the time the negotiations were first taken up, the defendant Lunderville did not have a sufficient acreage of land to justify the purchase of the tractor in question; and that the plaintiff proposed leasing the 160 acres just referred to. On the part of the appellant it is contended that the plaintiff proposed to lease him the 160 acres of land and to sell him a tractor of the kind and capacity mentioned in the agreement set out herein; that he, the plaintiff, would purchase the tractor from the Holt Manufacturing Company; and that the defendant Lunderville was to pay for the tractor out of the proceeds of the crops to be raised upon the premises leased by him from the plaintiff. This contention of appellant is controverted by the plaintiff. The appellant, to supoprt his contention, introduced evidence to the effect that the plaintiff came to his residence near Courtland in the county of Sacramento and there agreed to lease the premises to him upon the terms set out in the transcript and, also, to make sale of the tractor as above stated and further testified that at that time the plaintiff produced a blank contract for the purchase of the tractor from the Holt Manufacturing Company and asked the appellant to sign the same, stating that if the purchase were made in the name of the appellant the plaintiff would be enabled to obtain a commission for the sale. On the part of the plaintiff there is testimony to the effect that the contract set out herein was signed in the city of Sacramento, was all written by Walter J. Talbot, the district agent of the Holt Manufacturing Company and was signed by the appellant and the defendants, J. C. Johnson and H. C. Johnson, in the presence of said Walter J. Talbot; that the plaintiff was not there at the time and was not present during any of the time when the contract was prepared by Talbot, read over to the defendants and signed by them. Upon the question as to whether Lunderville was acting as the agent of the plaintiff in making purchase of

the tractor and whether there was any such agreement between the plaintiff and the defendant Lunderville, as alleged by the defendant, the testimony is in very sharp conflict. The finding of the court is to the effect that no such agreement was ever had. It is further contended by the respondent in this action that testimony as to whether there was or was not such an agreement is not admissible to vary the terms of the written contract. On the part of the appellant it is urged that such testimony went only to the consideration and is admissible under the rule announced and followed in the cases of *Tidewater Southern Railway Company* v. *Harney*, 32 Cal. App. 253 [162 Pac. 664], *Robson* v. *O'Toole*, 60 Cal. App. 711 [214 Pac. 278], and *Fuller* v. *McClure* [48 Cal. App. 185 [191 Pac. 1027]. The trial court, upon conflicting testimony, having decided that there was no such an agreement, it becomes wholly immaterial as to whether the testimony relating thereto was or was not admissible. The finding of the trial court on this question is in these words: " . . . The only understanding or contract or agreement between the parties was and is evidenced by the written contract referred to in plaintiff's complaint. Said tractor when delivered was not delivered to defendant Lunderville or the other defendants as the property of plaintiff or for plaintiff's use or benefit subject to the alleged contract set forth in defendant's answer or otherwise; that said tractor was delivered under the terms and conditions of said contract referred to in plaintiff's complaint." It is further found that the defendant Lunderville was not, nor were either of the defendants acting as representatives or agents of the plaintiff. This disposes of the question as to the agreement alleged by the appellant to have been orally entered into between the plaintiff and the defendant Lunderville concerning the terms and conditions of the purchase of the tractor in question. [1] While the testimony on this subject is all set out in the respective briefs of the parties and much argument based thereon, this court is bound by the findings of the trial court so long as there appears to be sufficient testimony supporting the findings. There is sufficient testimony in the transcript to have supported a finding to the contrary, yet if the trial court believed the testimony of the plaintiff and of his witnesses, the findings entered by the trial court are sufficiently supported and we are not at liberty to disturb them simply because there is

testimony which would have supported a contrary conclusion. [2] The main argument of appellant is founded upon the theory that the writing executed by the defendants and the Holt Manufacturing Company did not constitute a contract and was only a preliminary offer, in that certain additional papers were provided for and never executed, to wit, notes evidencing deferred payments and a lease. The writing set out herein contains the following paragraph: "Deferred payments as above recited to be evidenced by notes and lease made, executed and delivered to The Holt Manufacturing Company in the form required by said company on arrival or delivery of said 'Caterpillar' Traction Engine at destination designated above, but no such note or lease shall be deemed as in payment until the same shall have been actually paid in lawful money." No notes evidencing the deferred payments were ever made, nor was any lease executed or delivered. It is the theory of the appellant that by reason of the omission to have notes executed evidencing the deferred payments and a lease signed by the defendants that the instrument heretofore set out never became a binding contract.

An examination of the instrument shows that, in and of itself, it contained a full and complete description of the property, the terms of payment, and warranty by the seller, a reservation of title in the seller until payment should have been fully made and completed, a statement of all of the rights of the respective parties and covenants as to what was to be performed by the respective parties, properly signed and executed by the respective parties, as fully and completely fixing their legal rights as though the notes and lease referred to had been executed and delivered. Nothing additional was to be done by the Holt Manufacturing Company and no additional rights were to be given or acquired by the defendants. The property was fully described, the terms of payment were fixed, each party could ascertain from the instrument signed by them all of these facts. The paragraph which we have quoted simply provided for giving to the Holt Manufacturing Company additional evidence of the amount of the purchase price and of the title or property interest conveyed to the purchaser and retained by the seller. Under such circumstances, we do not see very well how it can be held that the instrument in question did not become a valid, binding and subsisting contract the very

moment it was accepted by the Holt Manufacturing Company. The minds of the parties had met as to the property in question and all the terms and conditions in relation thereto; the fact that the Holt Manufacturing Company, or seller, was entitled to demand some additional evidence of the contract did not in anywise change the character of the contract or prevent the minds of the parties meeting as to its terms and conditions. The property was delivered and at the time of the delivery, according to the contract, the Holt Manufacturing Company might, if it so elected, have demanded additional evidence. This it appears it did not do. This evidence would simply have been supplemental and we do not see how in any particular it was intended to change any of the terms of the contract which we have set forth herein. This being the case, we think the argument of the appellant based thereon faulty in its premises. We have no quarrel with any of the authorities cited by the appellant, but all those cases have to do with mere proposals or circumstances where an instrument has been orally agreed to be executed or the instrument signed is incomplete and shows a manifest intention of the parties that the minds of the purchaser and seller had not yet met in agreement. [3] The paper signed by the defendant before it had been signed by the Holt Manufacturing Company was not a mere offer. It contained a full statement of all the terms and conditions of the proposed purchase and sale and also contained a stipulation that upon acceptance by the Holt Manufacturing Company it should become a valid contract. The language thereof is as follows: ''This offer shall not be binding until it is submitted to and duly accepted by The Holt Manufacturing Company at its office in Stockton, California, U. S. A.; and that when so accepted it shall become a California contract and constructed (construed) in accordance with the laws of the State of California.'' There is no intimation anywhere that a more formal contract is to be executed. It appears clear that the instrument which we have set out is the contract and the only contract within the contemplation of the parties; that the payment provided for should be evidenced also by promissory notes could in nowise change or alter the terms or conditions of the contract. This is true of any lease that might have been executed. [4] It has been frequently held that where parties make an agreement which they intend shall be

binding from the time it is made, effect will be given to it from that time though they, also, intend that it shall be superseded by a more formal written agreement. (2 Wharton on Contracts, 645; *Blaney* v. *Hoke,* 14 Ohio St. 292; *Long* v. *Needham,* 37 Mont. 408 [96 Pac. 731].) **[5]** The courts uniformly hold that the cause of action on a note for a debt does not discharge the debt unless it is expressly so agreed. In the instrument in question, the contrary is expressly provided for. The authorities are so numerous that we need not cite but one which states the general principle. (*Brewster* v. *Bours,* 8 Cal. 501.) The debt was created when the contract was accepted and the tractor delivered, and the giving of a note thereafter would simply be evidencing an obligation already existing. **[6]** The affidavits presented to the trial court upon the defendant's motion for a new trial based upon newly discovered evidence set forth only that which was cumulative and we do not think the trial court committed any prejudicial error in denying the defendant's motion based thereon.

The findings of the trial court being supported by the testimony, as we have hereinbefore stated, and viewing the contract as we do, it follows that the judgment of the trial court should be affirmed, and it is so ordered.

Finch, P. J., and Hart, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 17, 1924.

All the Justices concurred.